## RECOVERY UNDER CONTRACT FOR PURCHASE OF BRICK.

Circuit Court of Cuyahoga County.

THE DARLINGTON BRICK & MINING CO. v. BERNARD SCHATZINGER ET AL.[*]

Decided, February 9, 1905.

*Sales—Trade Terms—Warranty.*

In an order for "first quality brick" and "second quality brick" the words "first and second quality" are merely descriptive, and import no warranty.

*Weed & Meals*, for plaintiff.
*P. G. Kassulker* and *Carpenter, Young & Stocker*, contra.

WINCH, J.; MARVIN, J., and VOORHEES, J., concur.

In the fall of 1899, the Darlington Brick & Coal Company, which hereinafter will be called the coal company, owned a plant and was engaged in the manufacture of brick at Darlington, Pennsylvania. The company was contemplating selling out and Bernard Schatzinger visited the plant at that time, perhaps with a view of becoming interested in the business. He was and is a large operator in real estate in the city of Cleveland, engaged extensively in building houses, and was familiar with all materials entering into their construction.

At the works in Darlington he saw a large quantity of brick of various colors and grades, manufactured at said works and piled under a shed.

---

[*] Affirmed without opinion, *Schatzinger* v. *Darlington Brick & Mining Co.*, 74 Ohio State, 441.

In the spring of 1900, the coal company having sold its works to other parties on March 28, made a proposition to one D. J. Kennedy, which he accepted, that he buy all the brick then on hand at its works. understood to be 520,000 all told, in stock, at an agreed price, and agreed to turn over to said Kennedy an order received from B. Schatzinger for 200,000 of the brick then in stock at $10.50 per M. f.o.b. cars, works.

No written order from Schatzinger was then in the hands of the coal company, but his agreement to take brick was reduced to writing and signed by Schatzinger April 2, 1900.   This written agreement was for 200,000 of the different kinds of brick in about the number specified by schedule, at $13.85 per thousand, delivered on Schatzinger's lot near the Boulevard and Lake View avenue, and Superior street, Cleveland, Ohio, on or before June 1, 1900, payment to be made as follows: the freight and hauling charges amounting to $3.35 per thousand, as delivered, and the balance of $10.50 per thousand to be paid by six months' note, without interest. dated from the date of completion of delivery.

The  schedule of brick ordered set forth a list of fifteen varieties, distinguished as to color and the number of each kind was given and varied from about 1,500 of the smallest lot to about 40,000 the largest lot.   The first four lots, about 50,000, were designated, "Second quality," and the remainder, "First quality."

On the back of this order signed by Schatzinger was endorsed the following:

"April 4. 1900.   I hereby agree to fill the within order of B. Schatzinger as near as possible out of the brick now in stock at works of the Darlington Brick & Coal Company. provided said company will be responsible for and assume the payment of freight and cartage, the same not to exceed $3.35 per M, and if same exceeds that amount said Co. will stand the excess and provided all of said  brick may be shipped in April or in April and May at my option.

"(Signed)   D. J. KENNEDY.

"We hereby agree to the above.

"THE DARLINGTON BRICK & COAL CO.,
"By C. C. YOUNG, *ils Attorney.*"

It appears that in these transactions said D. J. Kennedy was acting in behalf of himself and others who subsequently became incorporated as the Darlington Brick & Mining Company, hereinafter called the mining company, and which company made shipment of brick hereafter mentioned, and is plaintiff in this action.

A copy of the endorsement to Kennedy on the back of Schatzinger's agreement was mailed to the latter on April 11, 1900, and received by him the next day; shipment of brick to him followed, commencing April 14, 1900, twenty-three car loads being delivered before June 1, and three car loads being delivered June 13, and one car, final shipment, being delivered June 15, 1900, invoices being mailed him by the mining company. Schatzinger indicated to the drivers where he wanted these brick delivered, and it appears from his own testimony that he inspected the brick from time to time as they were delivered. The evidence also shows that Schatzinger never made any complaint as to the quality of the brick to either the coal company, the mining company or D. J. Kennedy, until June 27, 1900, when he wrote the mining company saying he was not aware of having ordered brick from it or through it; that the brick was subject to its order and that he would not deal with said company under any circumstances. While nothing was said in this letter as to the quality of the brick, on the same day he wrote the coal company that he would not accept the brick, because it had failed to deliver the kind and quality ordered.

Thereupon the mining company brought its action in equity, as the assignee of a part of the claim for the brick furnished, against Schatzinger, claiming the sum of $10.35 per thousand for said brick and made the coal company party defendant, which filed a cross-petition asking judgment against Schatzinger for $3.50 per thousand, the freight charges paid by it on said brick.

By answer to the second amended petition, Schatzinger alleges that no part of the brick he contracted for were ever delivered to him; that the brick delivered were of an inferior quality and he refused to accept them and so notified both the coal and the mining companies at once; that he never consented to any assign-

ment or partial assignment of his contract to the plaintiff; that time was of the essence of the contract and the brick were not delivered on time.

By answer to the cross-petition of the coal company Schatzinger makes practically the same defenses and further makes counter-claim for damages sustained by him for breach of express warranties contained in his agreement, which he says appears by the use of the words "first quality" and "second quality" therein contained.

The questions of law thus submitted to the court for its determination are:

First. Can plaintiff maintain an action in equity for part of the amount Schatzinger agreed to pay for the brick and thus deprive him of the right to submit his defense to a jury?

This question we answered in the affirmative in an error case between the same parties brought here to test that question alone, and it is unnecessary to give further reasons for so holding. It is sufficient to state that plaintiff could not sue at law on an assignment of part of the claim, and its only remedy is in equity.

Second. Do the words "first quality" and "second quality" used in Schatzinger's order for brick amount to an express warranty, or are they only descriptive of the kind of brick ordered?

This question is perhaps a mixed one of law and fact.

The testimony is unanimous that in the brick trade "first quality" means brick, of whatever make or kind, with at least one even face, with straight edges, and one end of the same character; "second quality" means the same as "first quality," except the edges may be chipped.

Following the Supreme Court in its decision of the case of *Bowman* v. *Anderson*, 70 O. S., 16, we hold these words are merely descriptive of the brick and import no warranty. In the Bowman case the order was for ten carloads of number one, select and common poplar lumber, and the words "select and common" indicating the grade of the lumber, were held to be merely descriptive.

As to the questions of fact to be determined, we shall make no long reference to the evidence adduced. While Mr. Schat-

zinger's testimony tends to sustain his contentions, it is contradicted on every material proposition and very largely by his own conduct. We think much of this contradiction arises from a misapprehension on the part of Mr. Schatzinger as to his legal rights under the circumstances of this case, and his obligations to the other parties.

Without further comment it is sufficient to say:

First.  We find that time was not of the essence of this contract.

Second.  We find that there was substantial delivery, according to the contract, of all the brick, of the kind and quality mentioned in the order.  There may be a deduction for a shortage of 166 brick and 4,700 brick, third quality, in the last shipment.

Third.  We find that the defendant, Schatzinger, accepted the brick in compliance with his order.

As the holding of this court that the order for brick contains no express warranty which will survive the acceptance of the brick may not be acquiesced in and a finding of facts may be desired, it is proper at this time to say, in explanation of the second finding of fact, that it is made for that reason and that we are of the opinion that the preponderance of the evidence is entirely to the effect that the quality of the brick delivered was as scheduled in order.

Decree may be drawn as indicated.